Affirmed.

C. Ed CARRITHERS and Robert G. Coulter, Appellants,

v.

TERRAMAR BEACH COMMUNITY IMPROVEMENT ASSOCIATION, INC., Appellee.

No. 18026.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 19, 1981.

Rehearing Denied Jan. 7, 1982.

Fred A. Lange, Houston, for appellants.

Robert M. Moore, Houston, for appellee.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

EVANS, Chief Justice.

The defendants appeal from a permanent injunction prohibiting them from constructing a marina on their land and in a submerged "turning basin" of the Terramar Beach Subdivision in Galveston County.

The trial court determined that the plaintiff owned a perpetual, irrevocable and exclusive easement over all the submerged land in the turning basin and found that the proposed marina would infringe on the plaintiff's easement rights.

The principal contention of the defendants is that they hold a valid permit which was granted by the United States Army Corps of Engineers to construct the proposed marina, and that this permit supercedes any easement rights previously held by the plaintiff. In support of this contention, the defendants argue that state and federal regulatory agencies have exclusive authority to control all navigable waters, and that the plaintiff's easement rights must therefore be considered subservient to their rights under the federally issued permit.

The parties stipulated that the area in dispute was a navigable body of water, submerged by artificial means in 1963 from dry land owned by the plaintiff's predecessor in title. The easement held by the plaintiff was created by written instrument in May 1975, and the defendants acquired their property rights subject to the plaintiff's easement. The trial court found the following facts, which are unchallenged.

1. Plaintiff is the owner of a perpetual, irrevocable and exclusive easement and right of way which includes the full, free and uninterrupted use of all of the turning basin of Terramar Beach Subdivision in Galveston County and the waters overlying said turning basin.

2. Defendants, owners of certain lands close to the turning basin, were granted a permit from the United States Army Corps of Engineers to construct a marina, bulkhead, docks, boat ramps, timber pilings, walkways and boat sheds, part of which would be located on their land, but most of which would be located in the turning basin where the plaintiff has its easement.

3. Defendants' proposed project would intrude into the plaintiff's exclusive easement to the land beneath the waters of the turning basin and would deprive plaintiff and its members of the rights held by them under such easement.

4. Although the surface waters of the turning basin are open for public use, the underlying land has never been dedicated to or appropriated for public use and the plaintiff has never abandoned its easement.

The trial court's injunctive order permanently prohibits the defendants from:

(1) Digging or removing earth, sand, marl or in any way displacing same, blocking, filling in, driving pilings of any size or length into, anchoring into or on, dumping, dredging, or placing any permanent or stationary objects or appurtenances in or on the land area where the Plaintiff's exclusive easement exists;

(2) Placing any objects on or over the surface waters of the "turning basin" where Plaintiff's easement exists which are in any way designed or meant to facilitate the temporary or permanent storage of boats, barges, boat ramps, docks or any facility which in any way blocks or impedes the full and complete usage of the surface waters of the "turning basin" where Plaintiff's easement exists;

(3) Obstructing or in any other manner impairing or interfering with the Plaintiff's exclusive easement.

The order further provides that it shall not be construed to limit or enjoin any person from using the waters of the turning basin for swimming, boating, fishing or water transportation.

■ It is undisputed that the parties hold under a common grantor and that the property rights of the defendants were acquired subject to the easement held by the plaintiff in the turning basin area. The instrument conveying the easement to the plaintiff's predecessor in title contains covenants of general warranty, and the defendants, claiming title under such common source of ownership, are therefore estopped to question the validity of the estate which the deed purports to convey. *Burns v. Goodrich*, 392 S.W.2d 689, 691 (Tex.1965). Thus, because of the relationship between the plaintiff and the defendants, it is immaterial that the waters overlying the bed of the turning basin are navigable. *Lorino v. Crawford Packing Co.*, 142 Tex. 51, 175 S.W.2d 410, 416 (1943).

■ The grant of a permit by the U. S. Army Corps of Engineers to the defendants did not bestow upon them any property rights with respect to the submerged lands in the turning basin. In fact, both the permit and the Corps' rules and regulations upon which the permit was issued, expressly provide to the contrary:

"Authorization of work or structures by the Department of the Army does not convey a property right nor authorize any injury of property or invasion of other rights." 33 C.F.R., § 320.4(g) (1980).

The permit itself provides:

That this permit does not convey any property rights, either in real estate or material, or any exclusive privileges; and, that it does not authorize any injury to property or invasion of rights or any infringement of Federal, State or local laws and regulations, nor does it obviate the requirement to obtain State or local assent required by law for the activity authorized herein.

The grant of a permit by the U. S. Army Corps of Engineers merely reflects the determination by that agency that it has reviewed and approved the proposed activity as being in the "public interest" with respect to navigation, fish and wildlife, conservation, pollution and other environmental considerations. 33 C.F.R. § 209.120 (1968); *Zabel v. Tabb*, 430 F.2d 199 (5th Cir. 1970).

■ No dispute exists between the plaintiff and the public at large concerning the use of the turning basin, and the injunction order expressly recognizes the rights of the general public to make appropriate use of the waters overlying the bed of the turning basin. Thus, there is no conflict between the rights of the plaintiff, which the injunction order seeks to protect, and the rights of the public, which are protected by State and Federal laws. The relationship between the plaintiff and the defendant makes it unnecessary to decide the question of ownership of the bed of the turning basin as between the plaintiff and the State of Texas, and this court has made no determination with respect to that issue.

■ The defendants further contend that the submergence of the turning basin ef-

fected an abandonment of the easement, arguing that the public character of the waters made it impossible for the owner of the easement to control the installation of piers, pilings and docks in the turning basin without interference with the public's right of use. This contention will be overruled. It is undisputed that the purpose of the easement was to control marine traffic within the turning basin by restricting the structures that could be erected therein. The plaintiff's easement rights were created after the bed of the turning basin was submerged beneath navigable waters, and the public character of the waters overlying the turning basin does not prevent the plaintiff from exercising the rights granted it under the easement.

The permanent injunction order is affirmed.